## W. H. BRYAN v. JOHN A. MILLAR and CLAY MILLAR, Appellants.

### Division One, June 8, 1923.

1. **EJECTMENT: Adverse Possession: Jury Question.** Where plaintiff in ejectment is the owner of the record title, the question of defendant's title by adverse possession, if dependent entirely on oral testimony, even though it makes out a strong case for him, is one for the jury.

2. ———: ———: **Limitations: Admission.** It is incumbent upon the party relying upon the Statute of Limitations to prove not only open, notorious and continuous possession for the requisite period but also the character of the possession. But this rule does not make an issue where the defense is admitted to be good.

3. ——: ——: ——: Judicial Admission.  Where there is no evidence of an agreed line, and plaintiff in his action of ejectment testifies to the sufficient duration, notoriety and continuity of defendant's possession, and also that defendant claimed, for more than ten years, in good faith, to own the land and that he himself knew all these things for more than ten years, his testimony is a judicial admission of the facts to which he testifies, and makes out defendant's title by limitations.

4. ——: Possession Subject to Future Ascertainment of Line: Paying Taxes.  The fact that defendant in the ejectment suit, who asserts title by limitations, paid no taxes on the land in suit is a circumstance which would be competent upon the issue of adverse possession, but it is not in itself sufficient to make an issue upon that question, nor to carry the case to the jury upon the question whether defendant held possession subject to future ascertainment of the true line, nor can it be held sufficient to destroy plaintiff's judicial admission that defendant's possession was held under a claim in good faith that the land was his.  Besides, in the face of such an admission, the burden is upon plaintiff, if he desires to rely upon it, to show a holding of possession by defendant subject to the future ascertainment of the true line.

5. ——: Judicial Admission: Asking Instructions: Waiver.  Where plaintiff's testimony makes out defendant's case, and concedes every element of adverse possession necessary to establish title in defendant, the asking of instructions by defendant, after his request for a directed verdict is denied, does not waive his right to urge as error the refusal to give such direction.

Appeal from Mississippi Circuit Court.—*Hon. Frank Kelly*, Judge.

REVERSED.

*Russell, Brown & Joslyn* for appellants.

(1)  Ten years "adverse possession" creates affirmative title.  Barry v. Otto, 56 Mo. 177; Norton v. Reed, 253 Mo. 253; Fulkerson v. Mitchell, 82 Mo. 13; Hiler v. Cox, 210 Mo. 696, 703.  (2) Appellant, Millar, and his grantor Martin, met every requirement of the law necessary to acquire title by limitations.  Their pos-

session was open, notorious, continuous, and adverse under claim of ownership from 1889 to the day of trial, February 18, 1921. This was more than suffcient. Spurlock v. Dougherty, 81 Mo. 171; Norton v. Reed, *supra*. (3) Defendant's adverse possession was clearly established by testimony that was not disputed. There was no claim made by repondent that his possession was not adverse. Therefore, defendants' peremptory instruction offered at the close of all the testimony should have been given. Lumber Company v. Muehlebach, 109 Mo. App. 646; Vermont Marble Co. v. Achuff, 83, Mo. App. 42; Sharp v. Railway Co., 161 Mo. 214; Tanner v. Railway Co., 161 Mo. 497.

*W. H. Grissom* and *J. M. Haw* for respondent.

(1) The possession of appellants under the mistaken idea that the land in question wás a part of the land conveyed to appellant Millar by Martin was not such adverse possession as to vest title thereto in said Millar. Quisenberry v. Stewart, 219 S. W. 625; Foard v. McAnnelly, 215 Mo. 371, 387; Crowl v. Crowl, 195 Mo. 338, 347; Jacobs v. Moseley, 91 Mo. 457; Majors' Heirs v. Rice, 57 Mo. 384, 389; Tamm v. Kellogg, 49 Mo. 118; Thomas v. Babb, 45 Mo. 384. (2) Record title in respondent was clearly shown and not disputed. Appellant Millar set up title by adverse possession, and testified he held possession under the mistaken idea that the land was a part of the land conveyed to him by Martin. The question of the nature and sufficiency of appellants' possession was clearly one for the jury, whether appellants' testimony was disputed or not, and the court properly refused the peremptory instruction. Quisenberry v. Stewart, 219 S. W. 626; Johnson v. Grayson, 230 Mo. 380, 394; Gannon v. Laclede Gas Light Co., 145 Mo. 514, 520; Hunter v. Wethington, 205 Mo. 285, 292; Mowry & Kettering v. Norman, 204 Mo. 173, 191; Draper v. Shoot, 25 Mo. 197, 204.

JAMES T. BLAIR, J.—Ejectment. The land sued for is a 7.698-acre tract in Mississippi County. No question arises on the pleadings. From an adverse judgment the Millars appeal.

The tract involved is a strip off of the west end of the north half of the northeast quarter of Section 11, Township 25, Range 15. Prior to 1883 Adam Millar owned the land in suit; also the northwest quarter of Section 11, the northeast quarter of Section 10, and that part of the southwest quarter of the northeast quarter of Section 11 which lies west of the Charleston-New Madrid road. From a time long prior to 1883 and continuously since then the Bridges-East Prairie road, a public road, passed from north to south, through the western part of the north half of the northeast quarter of Section 11, and thereby separated the parcel sued for from the rest of that subdivision. In 1883 Adam Millar died. His lands were partitioned. At the partition sale in 1887 Lucian D. Millar bought the north half of the northeast quarter of Section 11. By mesne conveyances the record title to this tract passed to respondent and his brother in 1901, and the brother's interest was bought by respondent in 1905. At the same partition sale S. P. Martin bought the northwest quarter of Section 11, and soon thereafter sold it and other lands to appellant John A. Millar, who went into possession in 1887. The strip in question was fenced with the other land west of the road during the life of Adam Millar. It was then partly cleared and in cultivation. Soon after his purchase John A. Millar finished clearing the parcel and he has had it in cultivation ever since. This covered a period of thirty-two years prior to the institution of this action. Respondent lived on that part of the north half of the northeast quarter of Section 11 east of the Bridges-East Prairie road, but made no claim to the tract sued for until about the time this suit was brought in June, 1920. There was no dispute about John A. Millar's possession and use of the land.

In rebuttal respondent was called as a witness. He testified that he never knew where the lines were until 1920; that Millar then asked for a quitclaim deed; that he knew his eighty was short, but did not know where the shortage was, and did not investigate until Millar approached him; that a few years ago he had procured a reduction of taxes because of the shortage. He testified, of his own knowledge, to the fact that Millar had the land under fence and had been in possession of it and had cultivated it, or rented it to tenants who cultivated it, for nearly thirty years; that he, respondent, rented the parcel in suit from John A. Millar in 1911 and for several years thereafter and paid him rent therefor; that he knew Millar claimed to have bought the land and had known for more than ten years before he began this action, and before the quitclaim deed incident, that Millar "was claiming that land. He said it was his;" that he knew "during all that time Mr. Millar was in possession of the land I am suing for, claiming to be the owner of it, and part of the time he was renting it to me." "Mr. Millar always told me he bought that." "Mr. Millar always said he had bought that and I never investigated it. I just thought Mr. Millar was right, and I am satisfied he thought he was. I knew at the time Mr. Millar came to me about it that he had been in possession of that land for a number of years, claiming to own it." Millar had paid no taxes on the land in suit.

At the close of the evidence appellants asked an instruction directing a verdict for them. This instruction the court refused, and an exception was saved. Under instructions respecting the law upon adverse possession the jury returned its verdict as indicated. Appellants contend the court erred in refusing to direct a verdict as requested.

I. Appellants' evidence made out a strong case of title by adverse possession, but since it consisted entirely of oral testimony it presented merely a question of fact

Jury Question.    for the jury. [St. Louis Union Trust Co. v. Hill, 283 Mo. l. c. 282; State ex rel. Brewing Co. v. Ellison, 286 Mo. l. c. 232, 233; Lafferty v. Casualty Co., 287 Mo. l. c. 565, 566; Quisenberry v. Stewart, 219 S. W. l. c. 626.]

II.  It is the rule that it is incumbent upon one relying upon the Statute of Limitations to prove not only open, notorious and continuous possession for the requisite period, but also to prove the adverse character of the possession. [Crowl v. Crowl, 195 Mo. l. c. 347, 348.]  This rule does not make an issue where the defense is admitted to be good.

III.  In this case there is no evidence of an agreed line, and the authorities upon that question do not apply. The case is unusual in that respondent went upon the stand and testified in the case to the sufficient duration, notoriety and continuity of appellant John A. Millar's possession, and also testified that Millar for more than ten years claimed, in good faith, to own the land in suit and that he, respondent, had known all these things for more than ten years. He omitted no element of a sound defense to his action.  This was a judicial admission of the facts to which he testified. It is contended the question whether Millar held possession subject to the future ascertainment of the true line, was open for decision by the jury.  There is no evidence which tends to show Millar so held possession.  The fact that Millar paid no taxes is a circumstance which would be competent upon the question of adverse possession (Draper v. Shoot, 25 Mo. l. c. 204), but it is not in itself sufficient to make an issue upon that question.  In no event can it be held sufficient to destroy respondent's admission that appellant John A. Millar's possession was held under a claim in good faith that the land was his.  Besides, in the circumstances, the burden was upon respondent, if he desired to reply upon it, to show a holding of possession by Millar subject to the future ascertainment of the true line. [Lemmons v. McKinney, 162 Mo. 525; Milligan v. Fritts,

226 Mo. l. c. 195, 196, 197, 202; Hedges v. Pollard, 149 Mo. l. c. 226; Gloyd v. Franck, 248 Mo. l. c. 477; Vogt v. Bergmann, 189 S. W. l. c. 1167; Bartlett v. Boyd, 175 S. W. l. c. 949; Martin v. Hays, 228 S. W. l. c. 744; Nichols v. Tallman, 189 S. W. 1184; Diers v. Peterson, 290 Mo. 249; Norton v. Kowazek, 235 S. W. l. c. 1063; Rhodes v. Wilson, 239 S. W. l. c. 115; Sands v. Clark, (No. 23440, not yet reported).] The testimony of respondent makes out appellants' case. It concedes the facts which defeat the action. The asking of instructions by appellants after their request for a directed verdict was denied did not waive their right to urge as error the ruling refusing the direction. [Milligan v. Fritts, supra.] The judgment is reversed. All concur.